St. Anthony Falls Water-power Company *vs.* King Wrought-iron Bridge Company.

October 25, 1876.

Removal of Causes to Federal Court—Appeal.—An order made upon an application for a removal of a cause from the state court to the circuit court of the United States is not appealable.

Same—**No Order of Removal Necessary.**—When a party has complied, in time, with the acts of congress, the state court, without entering any order, at once loses jurisdiction to proceed in the cause.

Same—**Due Application must be Made before Trial Begins, and before Jury is Called.**—The requirements of the acts of congress, in reference to the removal of causes from state to the federal courts, must be complied with before the trial in the state court is commenced. The calling of a jury to try a cause is a part of the trial; and producing the security required by the acts of congress, after a jury is called to try the cause, is too late.

**Pleading—Admission, in Answer, of Defendant's Corporate Character.**—Where the complaint alleges that the defendant is a corporation, and the answer denies each and every allegation in said complaint contained, and each and every part and portion thereof, not thereinafter expressly admitted, qualified, or denied, and then goes on to allege acts done by defendant, without showing that they were done in any other capacity than that alleged of defendant in the complaint, the allegation of corporation, in the complaint, stands admitted.

**Streets—Right of City to Remove Material—Contractor with City, though Impliedly Authorized by the City to Remove Material from Street, may bind Himself by a Contract with the Owner of the Fee to Pay for it.**—The plaintiff dedicated to public use, as a highway, a strip across the land leading to a bridge which the city of Minneapolis contemplated building. The defendant made a contract with the city to construct the bridge, under which contract, and the plaintiff's dedication, it might claim the right to use, in constructing the bridge, the rock necessary to be removed for the purpose of placing the bridge. After this, defendant made a contract with plaintiff, by which plaintiff agreed with defendant that it might take from plaintiff's land all the rock which it might want to construct the bridge, and by which defendant agreed to pay plaintiff for all the rock so taken, at a specified rate per perch, no distinction being made by the contract between rock which it was necessary to remove for the purpose of placing the bridge, and rock taken from other parts of plaintiff's land. *Held,* that plaintiff might recover, at the contract price, as well for the rock which it was thus necessary to remove as the other.

Action against the defendant, a Kansas corporation, to recover the agreed price of 5,035.30 perch of stone, taken by the defendant from plaintiff's land, under the circumstances stated in the opinion. The cause, being at issue, was called for trial at a general term of the district court for Hennepin county, *Vanderburgh*, J., presiding, on December 17, 1874, and a jury was called to try it. Thereupon the defendant—which had previously filed its verified petition under U. S. Rev. St. § 639, praying for

the removal of the action to the United States circuit court for Minnesota—presented such petition to the court, together with a bond in due form, and asked for an order of transfer to the federal court. The plaintiff's counsel objecting that the application came too late, as the trial had already begun, the application was denied—the defendant excepting—and the action was tried, and a verdict rendered for plaintiff for the amount claimed in the complaint. The defendant appeals from the order refusing the transfer to the federal court, and from an order refusing a new trial.

*Atwater & Babcock*, for appellant.

*Lochren, McNair & Gilfillan*, for respondent.

GILFILLAN, C. J. The order of the court below, refusing to transfer the cause to the United States circuit court, does not come within any of the subdivisions of Gen. St. c. 86, § 8, and is not appealable. The appeal from it is, therefore, dismissed.

Where a party to a suit complies in proper time with the requirements of the law of congress regulating removals from state to the federal courts, the state court at once loses jurisdiction of the cause. No order of the state court is necessary. Should the state court proceed to trial and judgment after that has been done, its judgment will be reversed for that reason. The application for removal must be made, and the law of congress be fully complied with, by the party, before trial. This means before the trial has begun. When a cause has been called for trial in its order, and a jury has been called to try the cause, the trial has been begun, even though the jury has not been sworn. The calling of the jury is a part of the trial. In this case, when the trial commenced, the defendant had not complied with the law of congress. It had filed its petition and affidavit, but had not offered its surety, within the meaning of the law. The security required must be actually produced and presented for the approval of the court.

The complaint alleges, among other things, the corpo-

rate existence of defendant. The answer denies each and. every allegation in said complaint contained, and each and every part and portion thereof, not thereinafter expressly admitted, qualified, or denied. It then goes on to allege, among other things, acts of defendant, without alleging that they were done in any other capacity than that charged in the complaint, to wit, as a corporation. Applying, by analogy, the rule as to a plea alleging a misnomer—that the party alleging it must give the true name—we think that, if defendant intended to rely upon a denial of its corporate character, it should have alleged in what character it performed the acts pleaded. The pleading of such acts, without showing that they were done otherwise than as a. corporation, qualifies the general denial, and leaves the, allegation in the complaint, of defendant's corporation, admitted.

This brings us to the merits of the case. In the fall of 1872, the city of Minneapolis then having in contemplation the construction of two bridges across the Mississippi river within its limits, the board of directors of the plaintiff passed this resolution : "Resolved, that, for the purpose of facilitating the construction of the two bridges across the Missis-. sippi river provided for in the union charter, and to connect, the same with the streets in the East Division, the Saint, Anthony Falls Water-power Company will donate to the city the right of way, eighty feet wide, through any of its land between Main street and the river, reserving to itself the right at all times to construct canals and railroads across or under such right of way. Provided the city will so construct such bridge as to give spans of not less than 135 feet, in length over any of the east-side channels, and will bridge. said canals."

Soon after this the city made a contract with defendant,. by which defendant agreed to construct said bridges, and "to furnish all the labor of every kind and nature, and all of the materials of every kind and description, necessary for·

the building and constructing of said bridges, and furnish all of the machinery which may be built into said bridges, or any part of them, or which may be used as appliances or aids in the construction of said bridges, in their foundations, substructures, breakwaters and superstructures."

One of the bridges was located so that the way between it and Main street passed over plaintiff's land, and it appears that to locate the bridge seat, at that end, it was necessary to quarry a considerable amount of rock; but it does not appear that the city established any grade over this way, or in any manner determined upon the necessity of reserving any of the material along it, unless at the bridge seat, either for the purpose of grading, or for use in the bridge, or any part of the way or its connections. After this contract was made, the defendant made a contract with plaintiff, by which defendant was permitted to quarry and take from plaintiff's land all the rock it might want in building that bridge, and defendant agreed to pay plaintiff for the rock taken, at the rate of forty cents a perch. The defendant quarried and took from plaintiff's land, and used in constructing the bridge, a large quantity of rock, a part of which was taken from the way we have mentioned.

The controversy is as to plaintiff's right to recover, at the contract price, for the rock taken from this way, the defendant claiming that, by virtue of its contract with the city, and the plaintiff's dedication of the land for a street, it had the right to quarry and take, without paying for it, for use in constructing the bridge, all rock necessary for that purpose; the plaintiff denying this proposition. The charge of the court distinctly presents the proposition, and instructs the jury in accordance with plaintiff's view of it.

There can be no doubt that, upon a dedication of land for a highway, although the fee remains in the dedicator, the public acquires the right of "digging the soil, and using the timber and other materials found within the space of the road, in a reasonable manner, for the purpose of

making and repairing the road and its bridges." *Jackson* v. *Hathaway*, 15 John. 447, 453. And this right is not confined to a use of the materials upon the strip dedicated, but they may be used upon any portion of the highway of which the land dedicated is intended to be a part. This right is in the public only, and no one can exercise it except under it and by its authority. In this case it was for the city council to determine whether any, and what, part of the materials upon the way in question should be removed and used upon the bridge, and no one could lawfully remove any of such materials except by authority of the council. The contract between the defendant and the city contains no express authority to remove or use any of the materials on plaintiff's land; but there is, of course, implied authority to remove whatever was necessary to be removed to make a place for the structure, and we think this implied authority extends to authority to use, in constructing the bridge, the material which it was thus necessary to remove. The evidence in the case tends to show that it was necessary to remove some of the rock for the purpose of placing the bridge. How much there was of this, and how much, not necessary to be removed for that purpose, was taken from the way dedicated, does not appear. Notwithstanding defendant might, under the authority impliedly given it by its contract with the city, have claimed the right to take and use, in constructing the bridge, the rock which it was necessary to remove for the purpose of making a place for it, there is no reason why it could not, by a contract with the owner—this plaintiff—made upon an adequate consideration, bind itself to pay for such rock.

As the case was submitted to the jury, their verdict includes a finding (and it is fully sustained by the evidence) that there was a contract between plaintiff and defendant, by which the latter agreed to pay the former, at a specified rate per perch, for all the stone which defendant should take from plaintiff's land, irrespective of the part of the

land from which it might be taken, and that all the rock
was taken under that contract. Such a contract was valid.
The agreement of plaintiff that defendant might take rock
from other portions of its land was a sufficient consideration
to sustain the contract, so far as it might cover rock taken
from that part of the land from which it was necessary to
remove the rock to make a place for the bridge.

Under the contract so found plaintiff was entitled to a
verdict for the whole of the rock taken by defendant, at
the contract price. This was the verdict rendered. And,
although the charge of the court was incorrect, so far as it
denied the abstract right of the defendant, under the author-
ity of its contract with the city, to take any part of the rock,
such error could not affect the rights of the parties; for,
upon the contract found by the jury, the plaintiff was enti-
tled to the verdict, whether the proposition of the court
were true or not.

Order affirmed.