# JUNE TERM, 1883.

## WHEELING.

\*WHITE ADM'R v. HOLT, JUDGE &c., AND CHESAPEAKE AND
OHIO RAILWAY COMPANY.

Submitted January 24, 1883—Decided June 30, 1883.

(†SNYDER, JUDGE, Absent.)

1. Under the act of Congress of March 3, 1875, no case pending in a
   State-court can be removed to a Federal court, unless the appli-
   cation to remove it is made to the State-court, at or before the
   term, at which it could be first tried, and before the trial.
   (p. 800.)

2. Where an action on the case was brought in a State-court, and
   there was a conditional judgment and writ of enquiry of dam-
   ages awarded at rules, the *case could be tried at the first term of
   the court thereafter;* and where at such first term thereafter the
   defendant appeared and demurred to the declaration, and the
   case was continued to the *next* term, and *then* the defendant

---

\*In view of the importance of the points decided in this case the opinion is by
direction of the Court printed in advance of its regular order.
†Judge S. was counsel below.

filed his petition and bond and asked to have the case removed to the circuit court of the United States, and the State-court refused to remove it, because the application was too late. HELD : The State-court properly refused to order the case removed. (p. 800 )

3. The filing of the petition and bond can not have the effect *ipso facto* of removing a cause from a State to a Federal court, because it is the duty of a State-court, when an application is made to it to remove a cause therefrom to a Federal court, to judicially pass upon all the questions involved in such application : the sufficiency of the petition and bond, and whether the surety is sufficient; whether the application is made in time ; the citizenship of the parties ; the amount in controversy ; to hear the proof on all these questions, and then judicially decide, whether a case for removal is made under the act of Congress, and if satisfied, that the cause is removable, to enter an order removing it ; and if satisfied that the cause is not removable, to refuse to make such order, and proceed with the cause, as if no application to remove had been made.   (p. 803.)

4. The facts set up in the petition should be such, as with what already appears on the record, if true, to show, that the suit under the act of Congress is removable. If such facts are not alleged in the petition and do not appear in the record, it is the duty of the State-court to enquire no farther but to refuse to order the removal of the cause. If such facts are alleged in the petition, as show, that, if true, the suit is removable, such facts may be controverted, and the court will then hear the evidence *pro* and *con* and judicially decide upon the evidence and either enter an order removing or refusing to remove the cause to the United States court.   (p. 803.)

5. When a case is *not removable*, and the State-court has so decided, the obtaining of a transcript of the record and the filing of it in the circuit court of the United States and the docketing of the case there, can have no possible effect upon the jurisdiction of the State-court over said case ; and it is the duty of the State-court, even if notified of such docketing of the case in the Federal court, to pay no attention thereto but proceed with the case, as if no application to remove it had ever been made. (p. 803.)

6. Where a State-court had properly refused an application to remove a case to the Federal court, *the case not being removable*, and after such refusal, the petitioner obtained a record of the case, and filed it in the Federal court, which docketed the case, and the said petitioner then took a copy of said order of the Federal court and filed it in the State-court, and objected to that court proceeding further in the case for the reason, that under such circumstances the case had been docketed in the Federal court,

the judge of the State-court refused to proceed, on application the Supreme Court of Appeals of the State will issue a *mandamus* to compel him to proceed with the case. (p. 813.)

7. This in such a case the Supreme Court of Appeals will do, although the answer to the rule in the *mandamus* proceeding shows, that a non-suit had been entered in the Federal court, and the Federal court had enjoined the petitioner for the *mandamus* from prosecuting his petition in the Supreme Court of Appeals. (p. 813.)

8. The court of last resort of a sovereign State cannot by a Federal court by injunction or other process against the litigants be deprived of its power to control by *mandamus* the inferior courts of the State in the discharge of their duties. (p. 814.)

Petition for a writ of *mandamus* to compel the circuit court of Greenbrier county to proceed in the trial of an action on the case in which A. E. White, administrator or John D. White, deceased, was plaintiff, and the Chesapeake & Ohio Railway Company was defendant.

The facts of the case are sufficiently stated in the opinion of the Court.

Alexander F. Mathews for petitioner.

Homer A. Holt for respondent, Holt, judge.

W. H. Hogeman for respondent, C. & O. R. Co.

JOHNSON, PRESIDENT, announced the opinion of the Court:

A. E. White, administrator of J. D. White, deceased, brought an action on the case, in the circuit court of Greenbrier county against the Chesapeake and Ohio Railway Company to recover damages under the statute for the killing of his intestate. The summons issued September 17, 1881, returnable to October rules. At October rules 1881, the declaration was filed claiming fifteen thousand dollars damages. At a circuit court held for said county at the first term after the writ was issued, the case was regularly placed on the docket for trial. At said term on the 10th day of November, 1881, the defendant by its attorney appeared and demurred generally to the declaration, in which demurrer the plaintiff joined. At the next term of said court, to-wit,

on the 18th day of April, 1882, the defendant filed a second demurrer to the declaration, and "each count thereof." An inspection of the declaration will show, that it contains but a single count. At the same term the record shows, that the "defendant also presented his petition herein, accompanied by a bond according to the act of Congress praying for the removal of this action to the district court of the United States for the district of West Virginia, sitting at Charleston and exercising circuit court powers, to the filing of which petition, and bond the plaintiff objected, and the court takes time to consider of said objections." On the 28th day of the same month, April 1882, the court sustained the objections to the filing of said bond and petition on the ground recited in its order; "for the reason that the same were not presented in time, because in the opinion of the court this term is not the first term, at which this cause could be tried, and doth also refuse to remove this action, as prayed for in said petition."

The defendant excepted to the ruling and decision of the court. The bill of exception sets out the petition, which alleges, that the matter in dispute, exclusive of costs exceeds five hundred dollars; that the controversy is between citizens of different States, that the plaintiff is a citizen of West Virginia, and the defendant is a citizen of Virginia and, prays, "that the court proceed no further in the case, except to make the order of removal required by law," &c. The petition is not sworn to. The bill of exceptions also sets out the bond, and is signed by Judge McGinness, a judge of another circuit in the State, who was holding court for Judge Holt in his circuit. A second bill of exceptions was also signed to the refusal to remove the cause upon the petition and bond being again tendered, after a special plea had been tendered and rejected, and after the defendant had pleaded the general issue. At the said term the cause was continued on motion of defendant. At the next term of the said court, to-wit, on the 29th day of June, 1882, the following order was entered:

"This day came the parties by their attorneys, and the plaintiff moved the court to proceed with the trial of this cause; which motion the defendant resisted upon the ground and for the reason, that since the last term of this court, a

transcript of the record of the proceedings has been taken to the district court of the United States for the district of West Virginia, and that this cause has been there regularly docketed; and it appearing to the satisfaction of this court, that the facts thus stated are true, it doth upon the ground, and for the reason thus alleged by the defendant, and for that reason alone, decline and refuse to proceed further with this case." To which ruling of the court the plaintiff excepted.

On the 14th day of October, 1882, the said plaintiff by counsel presented his petition to this Court praying, a writ or *mandamus* to be directed to the Hon. Homer A. Holt, judge of the circuit court of Greenbrier county, requiring him to proceed with the trial of said cause, or to show cause why he has not done so. This Court awarded the rule prayed for, which was made returnable on the *tenth* day of the January term 1883. The rule was duly served on the judge, and also on the Chesapeake and Ohio Railway Company.

The judge of the circuit court in his answer, as the reason why he refused to proceed with the trial of the case, says: "he declined and refused to proceed further with said action, because it was made to appear to respondent, that notwithstanding the proceedings had in said action in the circuit ourt of Greenbrier county at the preceding term, a transcript of the record of said action had prior to such motion, been filed and said action docketed in the district court of the United States for the district of West Virginia, sitting at Charleston and exercising circuit court powers, and because said action was then pending in said district court. Under the circumstances, the respondent was of opinion, and accordingly decided, that the jurisdiction of the circuit court of Greenbrier county had ceased, and that he could proceed no further in the said action. Respondent files herewith as part of this answer a certified copy of the order of the said district court filing therein the record of said action, and docketing said action to be further proceeded in in said court according to the act of Congress in relation to cases removed from State-courts to the courts of the United States. In view of the premises, respondent asks, that the *mandamus* prayed for be denied, and the rule, which has been awarded against him, discharged."

The said order referred to in the above answer entered in the said United States court on the 1st day of May, 1882, omitting the title is as follows:

"This day came the defendant by W. H. Hogeman, its attorney, and presented a true and complete transcript of the record of the above entitled action lately pending in the circuit court of Greenbrier county, West Virginia, including therein the proceedings taken to remove said action from said circuit court to this court; and on motion of said defendant it is ordered, that, the transcript of the record aforesaid be filed, and this action docketed in this court, to be therein proceeded with pursuant to the act of Congress in such cases made and provided."

The Chesapeake and Ohio Railway Company in its answer resisted the issuing of the *mandamus* on the three following grounds:

*First*, that "This proceeding is neither an appropriate nor available remedy under the law to accomplish the object of the petitioner in this suit. If the action of the honorable judge of the circuit court of Greenbrier county in the matters referred to in the rule aforesaid and in the petition, on which such rule was awarded was improper or erroneous, it cannot be reviewed or corrected by means of this proceeding, nor can the judge of the said circuit court by virtue of any order, judgment or writ, which can be legally entered or awarded therein, be compelled to proceed with the trial of the action referred to in the rule aforesaid."

*Second*, that "The action of the Honorable Homer A. Holt, judge of the circuit court of Greenbrier county, in the action referred to in the rule aforesaid was proper and correct and was justified by the facts and circumstances of the case. The said action had been legally removed to the district court of the United States for the district of West Virginia, sitting at Charleston and exercising circuit court powers, in conformity to the act of Congress in relation to such matters, and the jurisdiction of the said district court had legally attached to said action, and that of the said circuit court of Greenbrier county had ceased and determined."

*Third*, "For reasons set out in a bill of complaint filed by this respondent against A. E. White, administrator of J. D.

White, deceased, in the district court of the United States for the district of West Virginia, sitting at Charleston and exercising circuit court powers, an order of injunction has been awarded and perfected in said district court and served on A. E. White, administrator of J. D. White, deceased, and on his attorney, Alexander F. Mathews, Esq., restraining, inhibiting and enjoining the said White, administrator, &c., and his agents and attorney from further proceeding with the aforesaid application to your honorable Court for a peremptory writ of *mandamus.* A complete transcript of the record of the said injunction including therein the bill of complaint and exhibits, the order of injunction, and the process and return of service thereon endorsed, is herewith filed and made part of this answer, marked A. The said injunction is undissolved and in full force, and respect and obedience thereto should be enforced and is demanded. While this injunction remains in force, it would be eminently improper to proceed further with this proceeding. In view of the premises respondent asks that the *mandamus* prayed for be denied and the rule discharged."

Exhibited with the answer of the said railway company is the record of said injunction suit, the bill in which exhibits a transcript of the record, as it appeared in the State-court, together with the order docketing the action in the district court of the United States and the following order entered in said action in said United States court on the 6th day of November, 1882: "This day comes the defendant by its attorney and the plaintiff, though solemnly called, came not. Thereupon it is considered, that the said plaintiff be non-suited, and that the defendant go hence without day, and that it recover against the plaintiff five dollars damages for his false clamor, besides its costs in and about its defense herein expended." The bill also exhibits therewith the rule awarded by this Court. It is insisted in said bill, that said action was removable; that the State-court refused to remove the action; but that by virture of filing the petition and bond the case was removed, notwithsanding the denial of the State-court; that the defendant in the action then obtained a transcript of the record and docketed the said action in the United States court; that " on the 6th day of November, 1882, at a

term then in session of the said district court at Charleston final judgment was was rendered in the said action in favor of your orator and against the defendant herein; that this judgment is in full force and binding upon the parties thereto and is the judgment of a court, which had jurisdiction at the time of its rendition of both the parties thereto and of the subject matter thereof, and that your orator is entitled to have the benefit thereof and of all the advantages accruing therefrom."

The bill exhibits the rule awarded by this Court and proceeds: "Your orator avers, that the proceedings thus far had in the Supreme Court of Appeals and those intended as aforesaid by the defendant herein are without authority of law and are in contempt and disregard of the authority and judgment of the said district court, are intended and calculated to evade the action of said district court and deprive your orator of the benefit of the judgment of said court, and are calculated to defeat the object of said judgment, which ended the controversy in said action, by re-opening and re-litigating the said controversy in defiance of said judgment."

The injunction granted on the 12th day of January, 1883, after reciting, that notice of the application therefor had been served on A. E. White, administrator of J. D. White, deceased, is as follows: "It is ordered, that A. E. White, administrator of J. D. White, deceased, his attorneys and agents be and they are hereby inhibited, restrained and enjoined, until otherwise ordered, in the cause aforesaid from proceeding any further with the application for a peremptory writ of *mandamus* in the Supreme Court of Appeals of West Virginia or elsewhere, requiring the judge of the circuit court of Greenbrier county, West Virginia, to proceed with the trial of a certain action described in the bill aforesaid, brought by A. E. White, administrator of John D. White, deceased, as plaintiff against the Chesapeake and Ohio Railway Company as defendant, or in any other way to secure a trial of the said action in the circuit court of Greenbrier county, West Virginia," &c. This is the whole of the injunction order except the requirement, that a bond be executed, before the injunction should take effect. The bond so required was executed.

Shall the *mandamus* prayed for issue? Are the reasons

set out in the answers of the judge of the circuit court or of the said railway company or either of them sufficient to prevent it? The first enquiry that should be made is: was the action of *A. E. White adm'r. &c.* v. *The Chesapeake & Ohio Railway Company* removable under the act of Congress? If it was *removable* at the time, when the petition and bond were filed, if the controversy was between citizens of different States, and the amount in dispute between the parties exceeded five hundred dollars, and these requisites were made to appear in the record, and a proper petition and bond were filed in time, then the action was removable, and this Court reviewing the judgment of the court below upon the petition for *mandamus* would refuse to issue a peremptory writ of *mandamus* to compel the circuit judge to proceed in the trial of a case, of which he did not have a rightful jurisdiction.

Was this a controversy between citizens of different States? The record shows clearly, that the plaintiff, White, was a citizen of West Virginia. This Court judicially knows, that the Chesapeake and Ohio Railway Company is a corporation controlling and operating a great line of railway traversing the entire State from east to west, and that it could do so only by operation of the laws of West Virginia, and that it is therefore a domestic corporation; and within the meaning of the judiciary act, of Congress is a citizen of West Virginia. The circuit court of Greenbrier county judicially knew this and therefore knew from the face of the petition itself, that the controversy was not between citizens of different States, but between citizens of the same State. This was a sufficient reason for refusing to remove the case to the circuit court of the United States, although it was not assigned as a reason for the refusal to remove. But the said circuit court held, that the application for removal came too late; that it was not made at the first term at which the case could have been tried. Is this true? The third section of the Act of Congress of March 3, 1875, provides:

"Whenever either party or any one or more of the plaintiffs or defendants, *entitled to remove* any suits mentioned, * * * shall desire to remove such suit from a State-court to the circuit court of the United States, he or they may

make and file *a petition in such State-court,* before or at the term, at which said cause could be first tried, and before the trial thereof for the removal of such suit into the circuit court to be held, &c. * * * and shall make and file therewith a bond with good and sufficient surety for his or their entering in such circuit court * * * * a copy of the record in such suit. It shall then be the duty of the State-court to accept said petition and bond and proceed no further in such suit," &c.

In *Babbitt* v. *Clark,* 103 U. S. 606, the Supreme Court of the United States held, that under the act of March 3, 1875, the case could not be removed, unless the petition for removal should be filed "at or before the term of the State-court, at which the case could be first tried, and before the trial." The Chief Justice at page 612 said : "The act of Congress does not provide for the removal of a case at the first term, at which a trial can be had on the issues, as finally settled by leave of the court or otherwise, but at the first term, at which the cause as a cause could be tried. Under section 12 of the Act of 1789 c. 20, (Stat. 79) the application for removal must have been made by the defendant when he entered his appearance, but under the Acts of 1866 c. 288, (14 Stat. 306) and 1867, c. 196 (*Id.* 558) it might be effected at any time before trial. This was the condition of existing legislation, when the Act of 1875 was passed, and the language of that act shows clearly a determination on the part of Congress to change materially the time, within which applications for removal were to be made. It was more liberal than under the Act of 1789, but not so much so as in the later statutes. Under the Acts of 1866 and 1867 it was sufficient to move at any time before actual trial, while under that of 1875, the election must be made at the first term, in which the cause is in law triable."

Chapter 125, section 44, Code 605 provides ∴

"If a defendant who appears fails to plead answer or demur to the declaration or bill, a rule may be given him to plead. If he fail to appear at the rule-day at which the process against him is returned executed, or when it is returnable to a term, at the first rule-day after it is so returned, the plaintiff, if he has filed his declaration or bill may have a condi-

tional judgment or decree *nisi* as to such defendant. No service of such decree *nisi*, or conditional judgment shall be necessary. But at the next rule-day after the same is entered, if the defendant continue in default, or at the expiration of any rule upon him with which he fails to comply, if the case be in equity, the bill shall be entered as taken for confessed as to him, and if it be at law judgment shall be entered against him, with an order for the damages to be enquired into, when such enquiry is proper."

Section 47, provides :

"If a defendant against whom judgment is entered in the office, shall, before it becomes final, appear and plead to issue, it shall be set aside, unless an order for enquiry of damages, has been executed, in which case it shall not be set aside without good cause. Any such issue may be tried at the same term, unless the defendant show good cause for a continuance."

Section 6 of chapter 131, Code p. 626, provides :

"At the next term after an order at the rules for an enquiry of damages the same may be tried, and a final judgment rendered therein, unless good cause be shown for a continuance."

It has been frequently decided, by the Virginia court of appeals and our own, that the court has control over proceedings at the rules and will correct them if erroneously taken, and such correction will not delay the trial of the case, and also if the defendant pleads, whatever defects appear in the rules are entirely immaterial. A demurrer is a plea and tenders an issue of law. The defendant demurred, at the first term, at which he could have appeared to the action. That demurrer could have been at once heard and determined and might have ended the case. Had it been overruled, according to our practice, the case could at once have been heard, and the damages ascertained, whether the defendant entered any other plea or not. He did not file his petition at that term, but at the next, and clearly it was not under the decision of *Babbitt* v. *Clark supra,* filed at the first term, at which the case could be tried, and for this reason was not removable.

But it is insisted, that it was removed whether removable

or not, and that the State-court has no voice in determining, whether or not the case was removable; that the filing of the petition and bond *ipso facto* ousted the State-court from jurisdiction and conferred jurisdiction on the circuit court of the United States; that the removal is effected by the *act of the party*, who chooses to file a petition and bond, whether the petition states facts necessary to show a case for removal or not, whether or not the bond is in form, and whether or not the surety is sufficient, that the circuit court of the United States, alone has the right to say upon a motion to remand, whether or not the act of Congress has been complied with; that therefore, although this case was clearly not removable, and the circuit court of the State so decided and refused to give up its jurisdiction and order the removal, yet, because the attorney for the defendant in defiance of the judgment of the court, in which he was an attorney, chose to procure a transcript of the record and filed it in the circuit court of the United States, which court docketed the case, and said attorney then appeared at the next term of the circuit court of Greenbrier county and objected to the cause being further proceeded in, because he had docketed the case in the Federal court, and he thereby induced the State-court to refuse to proceed in a case, in which it had decided, that it had jurisdiction, the powers of the Court of last resort in this sovereign State, could thus be paralyzed by the mere act of an attorney-at-law. We can see no middle grounds; either the State-court has the right to decide judicially, whether or not the requirements of the acts of Congress relative to the removal of causes, into the Federal court have been complied with, or else the State-court has no rights whatever in the premises, and the mere filing by the party in the Federal court of the petition and bond at any stage of the proceedings in the State-court, *ipso facto* removes the cause into the Federal court and upon a motion to remand, the latter court alone has the right to decide, whether or not the petition, was filed in time, whether or not the bond and security were sufficient, and whether or not the facts, as they appear by the record, entitle the party to have his cause removed. I know, a number of courts have so decided, but among them there is no decision of the Supreme

Court of the United States.     See *Stewart and Cutts v. Morde-cai,* 40 Geo. 1; *St. Anthony Falls W. P. C.* v. *King Bridge Co.,* 23 Minn. 186; *Herryford* v. *The Ætna Ins. Co.,* 42 Mo. 148; *Hatch* v. *Railway Co.,* 6 Blatch. 105; *Fisk* v. *Railroad Co.,* 6 Blatch. 362; *Fisk* v. *Union Pacific R. Co.,* 8 Blatch. 243; *Connor* v. *Scott,* 4 Dill. 242; *Cobb* v. *Ins. Co.,* 3 Hughes 452.

On the other hand it has been held by many courts, that it is the duty of the State-court, to whom the application for removal is made, to enquire into the facts and judicially pass upon the question, whether or no under the act of Congress the case is reasonable, and either to grant or to deny the prayer of the petition.     See *Mahone v. Railroad Co.,* 111 Mass. 72; *Bryant* v. *Rich,* 106 Mass. 180; *Du Vivier* v. *Hopkins,* 116 Mass. 125; *Knickerbocker Life Insurance Co.* v. *Gorbach,* 70 Penn. St. 150; *Hadley* v. *Dunlap,* 10 Ohio St. 1; *Whiton* v. *Railroad Co.,* 25 Wis. 424; *Akerly* v. *Vilas,* 24 Wis. 165; *The People ex rel.* *Western Tran. Co.* v. *Superior Court,* 34 Ill. 356; *Darst* v. *Bates,* 5 Ill. 439; *Delaware Railroad Construction Co.* v. *Railroad Co.,* 46 Ia. 406; *Burch* v. *Davenport & St. Paul R. R. Co.,* 46 Ia. 452; *Crane* v. *Reeder,* 28 Mich. 527; *Mabley* v. *Judge of Supreme Court,* 41 Mich. 33; *Atlas Insurance Co.* v. *Byrus,* 45 Ind. 133; *Mc Whinney* v. *Brinker,* 64 Ind. 360; *Blair* v. *West Point Manufacturing Co.,* 7 Neb. 146; *Orosco* v. *Gagliardo,* 22 Cal. 83; *Clark* v. *Opdyke,* 10 Hun. 383; *Carswell* v. *Schley,* 59 Geo. 19; *State ex rel. Coons* v. *Judge, &c.,* 23 La. An. 29; *Henen* v. *B. & O. R. R. Co.,* 17 W. Va. 881; *P. W. & Ky. R. R. Co.* v. *B. & O. R. R. Co.,* 17 W. Va. 812; *Tunstall* v. *Parish of Madison,* 30 La. An. 471.

In *Du Vivier* v. *Hopkins,* Gray, C. J., said: "We have no doubt or hesitation in affirming the order of the superior court refusing the petition for the removal of this case into the circuit court of the United States." In *Mahone* v. *R. R. Co.* the same learned judge said: "But in order to transfer the case from the State to the Federal court, the requirements of the act of Congress must be strictly and fully complied with.     It is only upon such compliance, that the act declares it shall be 'the duty of the State-court to accept the surety and proceed no further in the suit.'     If they are not complied with, the jurisdiction of the Federal court does not

attach, the jurisdiction of the State-court is not affected, and it is its duty to proceed with the trial or other judicial disposition of the case, as if no attempt had been made to remove it." The court below in that case refused to remove, and its judgment was affirmed.

In the case of *The People ex rel. Western Trans. Co.* v. *Superior Court* there was an application for *mandamus* to compel the court to remove the cause. The *mandamus* was refused. The court said: " At the hearing of the petition the petitioner should adduce satisfactory evidence of the facts, which the act of Congress requires to have existed, to entitle him to a removal of the cause. If there is no satisfactory evidence offered of such facts, it is the duty of the court to refuse the the prayer of the petition.    *    *    *    As there was no evidence before the court below, that the plantiffs were citzens of Illinois at the time, when the suit was commenced, its refusal to order a removal of the cause was correct."

In *Burch* v. *Davenport & St. Paul R. R. Co.* the court said : " It does not therefore follow, that a mere filing of a petition and affidavit, *ipso facto* removes the cause without regard to the character of the suit or the form of allegations of the application for removal. If the suit is not one, which under the laws of Congress may be removed, it is the duty of the State-court to disregard the application for removal, and proceed with the trial, as though no such application had been made. In such case the petition for removal presents a question of law for the determination of the State-court."

In *Orosco* v. *Gagliardo*, the court said : " The defendant contends, that under this provision " of the act of Congress, " when the petition is filed, and the surety is offered, the State-court can do no further act in the case except to accept the surety and order the removal. This is not the proper construction. The court must first be fully satisfied by the proper evidence, that the application for the removal is founded upon facts, which entitle the applicant to the order, and for this purpose, the court has a right to enquire into the facts set forth in the petition as well as investigate the sufficiency of the surety and determine the matter accordingly."

In *Clark* v. *Opdyke*, at page 386, the court said: "The act of 1875 does not prescribe what the petition shall contain;

but it provides, that when certain facts specified in the act exists, a petition may be made and filed for the removal of the suit. The existence of the requisite facts must be ascertained by the court, and to that end, the averments of the petitioner in regard to them may be controverted by the opposite party. Under the act of 1789, which was like that of 1875, in this particular, affidavits or orther proofs were frequently received to controvert the petition." The Court cites on this point, *Anderson* v. *Manufacturers' Bank*, 14 Abbts. II. R. 436; *Fisk* v. *The Chicago, Rock Island & Pacific R. R. Co.*, 3 Abb. N. S. 453; *Smith* v. *Butler*, 38 How. Pr. 192; *New York Piano Co.* v. *New Haven Steamboat Co.*, 2 Abb. N. S. 357.

In *Carswell* v. *Schley*, the court said: "When a court, in which a cause is pending, is called on to yield its jurisdiction on statutory conditions said to appear on the face of certain documents presented to it, it must inspect the documents and determine whether the conditions appear or not. How else is it to know, whether to retain the case or part with it; whether to grant the application or refuse it; whether to treat the case as still pending or out of court? If a court is to know the situation of its own business, and how to order its proceedings in reference thereto, it cannot decline the duty of deciding, whether a given case is a part of its business or not, when the question is properly made before it. The scheme of removal ordained by Congress is open and public. It is by petition. It contemplates a taking with leave, and not furtively by a sort of statutory larceny. The State-court is to know of the proceedings for removal and see, that they are such, as the act prescribes. When they conform to the act, the court has no right or power to retain the case; and when they fail in any essential particular, it has no right or power to send the case away or order it removed."

We have reviewed these authorities with the purpose of showing, what construction the courts of last resort of a large number of the States have put upon the removal acts of Congress with regard to the right of the State-court to investigate and judicially pass upon the facts necessary to entitle a party to a removal of his cause, before it is compelled to re-

linquish its jurisdiction. But in full accord with these State authorities are decisions of the Supreme Court of the United States. In this particular, as it has been held by the Supreme Court of the United States, there is no essential difference between the act of 1789, and the act of 1875.

In *Gordon* v. *Longest*, 16 Pet. 97, there was a writ of error to the supreme court of Kentucky. The inferior State-court had denied the prayer of the petitioner for a removal of the case, and the judgment was affirmed by the supreme court of the State. Although this decision was rendered in 1842, it is the first case upon the subject of removal of causes to be found in the reports of the Supreme Court of the United States. After quoting the twelfth section of the act of 1789, on p. 102, the court by Mr. Justice McLean say: "Under the above section it must be made to appear, to the satisfaction of the State-court, that the defendant is an alien, or a citizen of some other State than that, in which the suit is brought and that the matter in controversy, exclusive of costs exceeds the sum of five hundred dollars."

*Kanouse* v. *Martin*, 15 How. 198, was also decided on a writ of error to the State-court and the court, page 208 by Mr. Justice Curtis said: "When by an inspection of the record it appeared to the court of common pleas, the State-court, that the sum demanded in this action was one thousand dollars, and when it further appeared, that the plaintiff was a citizen of the State of New York, and the defendant of the State of New Jersey, and the latter had filed a proper bond with sufficient surety, a case under the twelfth section of the judiciary act was made out, and according to the terms of that law it was 'then the duty of the State-court to accept the surety and proceed no further in the cause." Not his duty to give up jurisdiction on the filing of a petition merely and a bond whether sufficient or insufficient, but to look at the facts, and if a case for removal was made, and a proper bond filed with sufficient security, of all of which he was the judge, then and not until then was it his duty to relinquish his jurisdiction.

Chief Justice Waite, with whom concurred Mr. Justice Davis in his dissenting opinion in *Insurance Co.* v. *Morse*, 20 Wall. 458, said: "The State-court had jurisdiction to try

the question of citizenship upon the petition to transfer. Upon the facts, I think, it was authorized to find, that the company was for all the purposes of that action a citizen of Wisconsin, and refuse the order of removal." The right of the State-court to enquire into the citizenship of the petitioner was not questioned in the opinion of the court.

In *Fashnacht* v. *Frank*, 23 Wall. 416 it was held: "The refusal of the State-court to grant a removal under the act of Congress *not having been excepted to*, and *that* matter not having been involved in what was before the supreme court of the State, its judgment cannot be held to have embraced it nor indeed anything but the matter of the dissolution of the injunction a matter, which involved no Federal question." For this reason the writ of error was dismissed.

In *Kimball* v. *Evans*, 93 U. S. 320, Waite, C. J., said: "It is clear we have no jurisdiction in this cause. The judgment of the Supreme Court is not the final judgment in the suit. It disposes finally of one of the questions involved in the suit, but not of the suit itself. The suit is still pending in the district court, and it is not impossible, that the parties now complaining may be satisfied with the judgment, which they may in the end be able to secure in the State-courts. If not, after a final judgment has in fact been rendered by the highest court of the State, in which a decision in the suit can be had, the case may be again brought here for a determination of the questions arising upon the petition for removal."

In *Railway Company* v. *Ramsey*, 22 Wall. 328, the court through the chief justice said: "To obtain the transfer of a suit, the party desiring it must file in the State-court a petition therefor and tender the required security. Such a petition must state facts sufficient to entitle him to have the transfer made. This cannot be done without showing, that the circuit court would have jurisdiction of the suit when transferred. The one necessarily includes the other. *If upon the hearing of the petition, it is sustained by the proof*, the State court can proceed no further."

In *Bible Society* v. *Grove*, 101 U. S. 611 it was held, "the courts of the United States are not required to take any suit, until in some form their jurisdiction is made to appear of

record." That jurisdiction can only be made to appear by the record as it comes from the State-court. If it does not so appear, although the State-court has entered an order of removal, the law requires the Federal court on motion, to remand it. If the State-court could not investigate, and pass upon the jurisdictional facts, it would be in the power of any litigant although he might be the clerk of the State-court in which the action was brought and by that fact judicially known to the court to be a resident of the State, being sued in said court to file a petition, alleging himself to be a resident of another State, and that the amount in controversy exclusive of costs exceeded five hundred dollars, and tender a bond, and remove the case, and he could thus take his adversary to the Federal court, and that court, would have the record, which would falsely show on its face, that the cause was removable. The jurisdictional facts must of necessity be enquired into somewhere. It is not proper, as we have seen in *Railway* v. *Ramsey*, for the circuit court of the United States to do it, because that court takes the record as it comes from the State-court, and if the State-court cannot investigate the jurisdictional facts, it necessarily follows, that both courts are at the mercy of an unscrupulous suitor, who states falsehoods in his petition without the fear of the penalties of perjury, because he is not required to swear to the petition."

In *Insurance Co.* v. *Pechner*, 95 U. S. 183, in which the court of appeals of New York affirmed the decision of the court below refusing an application to remove the case, the supreme court held: "This right of removal is statutory. Before a party can avail himself of it *he must show upon the record*, that his case is one which comes within the provisions of the statute. His petition for removal when filed becomes a part of the record in the cause. It should state facts, which taken in connection with such, as already appear, entitle him to the transfer. If he fails in this, he has not in law shown to the court, that it cannot 'proceed further with the cause.' Having once acquired jurisdiction, the court may proceed, until it is *judicially informed*, that its power over the cause has been suspended. * * * The court (State-court) had the right to take the case, as made by the party himself and not

enquire further. If that was not sufficient to oust the juris-diction, there was no reason why the court might not proceed with the cause. We think therefore the court of appeals did not err in its decision." To the same effect is *Armory* v. *Armory*, 95 U. S. 186.

In the "Removal Cases," which arose under the Act of 1875, the court by Waite C. J., said: "We fully recognize the principle heretofore asserted in many cases, that State-court is not required to let go *its jurisdiction, until a case is made, which upon its face shows,* that the petitioner can remove the cause as a matter of right." 100 U. S. 474. To the same effect is *Babbiti* v. *Clark,* 103 U. S. 610. In *Railroad* v. *Koontz,* 104 U. S. 5, the court held: "The jurisdiction is changed, when the removal is demanded *in proper form and a case for removal is made.* * * * The right to remove is derived from a law of the United States, and whether a case is made for removal is a federal question. If *after a case has been made,* the State-court forces the petitioner to a trial and judgment, and the highest court of the State sustains the judgment, he is entitled to a writ of error to this Court, *if he saves the question on the record.*" How could he save the ques-tion on the record unless, the court had *judicially* passed upon it, and given its judgment *thereon?* *National Steamship Co.* v. *Fugman,* 106 U. S. was a writ of error to the court of ap-peals of New York. In that case the court by Mr. Justice Harlan said: "Where the State-court adjudged that it had authority to proceed, the company was entitled to regard the decision as final so far as that tribunal was concerned, and was not bound in order to maintain the right of removal, to protest at subsequent stages of the trial against its exercise of jurisdiction. Indeed such a course would scarcely have been respectful to the State-court, after its ruling on the point of jurisdiction had been made."

A learned writer has aptly said: "If the court cannot be deprived of its jurisdiction, until it is *judicially informed,* that its power has been suspended, then it cannot be so deprived, until it judicially ascertains the truth of the assumed facts, by which that suspension has been effected. It cannot *judicially know,* that the jurisdictional averments of the peti-tion are true without a judicial inquiry, and it can make no

such inquiry without the right to controvert said averments. The State-court unquestionably had the rightful jurisdiction of the cause before the filing of the petition, and unless the averments of the petition are true, its jurisdiction continues, because a mere fiction or falsehood cannot transfer its juris- diction. Then must the court, which confessedly has the righful jurisdiction, upon a mere suggestion of facts, which may be true or false, surrender its jurisdiction to a court, which can have jurisdiction only in the event said facts hap- pen to be true? If this be so, then this absurdity follows: "The court which has jurisdiction must decline to exercise it, until a court, which may have none, may see proper to decline it. Such a construction of the statute is not only un- reasonable but is in conflict with the most elementary prin- ciples of constitutional government."

The circuit court of Greenbrier not only had the right to decide the question, whether the action was removable, but, as we have found, decided it correctly. The filing of the transcript and the docketing of the case in the Federal court after the filing of the petition and bond of course did not and could not remove the case. When the State circuit court refused the petition of the defendant, the proper course for it to have pursued, instead of defying the State court, was to submit to the refusal of the court, proceed with the trial and in case of an adverse judgment, take an appeal to this Court, and if the judgment of the court below had been affirmed, obtain a writ of error from the Supreme Court of the United States, which alone can finally decide the ques- tion. There is neither reason nor authority for the proposi- tion, that an inferior Federal court can sit in review of the judgment of even an inferior State-court. The course indi- cated above, which in our opinion is the only proper course, was pursued in all such cases until *Railroad* v. *Whitton*, 13 Wall. 270, decided in 1871. Since then, there have been several instances, in which on the denial by the State-courts of the petition for removal, the petitioners have taken transcripts of the record and docketed the cases in the Federal court, which court, has assumed jurisdiction, and from them Federal courts, as well as from State supreme courts, the same cases have gone up to the Supreme Court of the United

States.    Of this class were the "removal cases."    100 U. S. and *Bondurant* v. *Watson*, 103 U. S. 281.

In 1864 Judge Drummond, of the seventh circuit, in *Hough* v. *Transportation Co.*, 1 Biss. 425, speaking of the acts of Congress, said:    "They have given certain legal discretion to the judge of the State-court, not that thereby the defendant is deprived of the right, which the statute gives him, but that it is competent for the appellate State-court to redress the wrong, if wrong has been done to the defendant, by correcting the error of the State-court, in which the suit was brought.    If the highest court in the State will not do that, the defendant has his remedy by writ of error to the Supreme Court of the United States which would have jurisdiction in such case.    All the cases in which the question has arisen have gone to the Supreme Court of the United States in this way, and the error of the State-court, where any existed, has been rectified in the Supeme Court."

This course would preserve the harmony of our dual system of government and prevent these unhappy conflicts of jurisdiction, which are so frequent to-day between the State and Federal courts.    The recognition of the right of a party to have his cause pending in a State-court and in a Federal court at the same time with the possibility of the two courts giving conflicting decisions, and of each court using its power to enforce its judgments and decrees by injunctions, processes of contempt and the like, produces the utmost confusion and tends directly to anarchy.    The power of a court by appropriate process to enforce its judgments and decrees, should not depend upon a final decision of the Supreme Court of the United States, rendered years after a party has been punished for a contempt of the process of such a court.    Suppose the State-court, which has passed judicially upon the question, whether the case was removable, and denied the right to remove, goes on with the case and enters final judgment, which the Supreme Court of the United States says it may rightfully do, *if the case was not removable*, and the party has notwithstanding taken a transcript and docketed his case in the Federal court, and that court takes jurisdiction and goes on to final judgment, and its judgment is the reverse of the judgment in the State-court, and processes of contempt,

are resorted to by both courts, and the parties respectively are severely punished, one by the State-court, and the other by the Federal court; and a writ of error has been taken from the Supreme Court of the United States, and that Court decides, that the case *was not removable*, will the party thus punished by the Federal court have any redress? On the other hand if, it is decided, that the case *was removable*, what redress has the other party for what he has suffered in his person? Such a state of things should not to exist under any form of government, certainly not under a government of law.

It having been many times held by the Supreme Court of the United States, that before the State-court is compelled to give up its jurisdiction it *must* be *judicially informed*, that its power over the case has been taken away, then that judgment like any other ought to stand, until it is reversed by appellate proceedings, and when so reversed, all orders entered, after a proper application for removal has been made and a case for removal is shown to exist, shall be declared null and void by such appellate court. *Hadly* v. *Dunlap*, 10 Ohio St. 1. But it has been uniformly held by the Supreme Court of the United States, that the jurisdiction of the State-court is in no case taken away, unless the case, at the time of the application *was removable;* and that the State-court must pass upon that question. In this case the State-court did pass upon the question and denied the prayer of the petition; and we have found, that the case was *not removable.* Therefore the jurisdiction of the State-court was not ousted, and the docketing of the action in the Federal court *could not remove a non-removable case.* There is then no force in the answer of the judge of the circuit court.

But it is insisted by the Chesapeake and Ohio Railway Company in its answer, that proceedings by the parties in the application for the *mandamus* were *enjoined.* We have no hesitation in saying, that the Federal court, had no power to enjoin the parties in this case. If that court had such power, then the inferior Federal courts can by their process of injunction, take away from this Court its right and authority by *mandamus* to control inferior State-courts in the dis-

charge of their duties.. Thus the whole State would be under the control of the Federal courts. A proposition so monstrous cannot for a moment be entertained. We do not remember ever to have heard of so bold an attempt, by professional ingenuity to deny to a party the right to try his case in any court. A party is sued in the State-court; he makes an application to remove the case to the Federal court; it is denied: he then on his own motion obtains a continuance, then procures a transcript of the record and dockets the action in the Federal court; at the next term of the circuit court flaunts in the face of the State-judge the order of the Federal court docketing the case therein; the State-court refuses to proceed, and after a rule in *mandamus* to compel the State-judge to proceed was issued, goes to the circuit court of the United States and has the plaintiff called and a judgment of *non-suit* entered, and then files his bill for an injunction setting up said *non-suit* as a *judgment*, which ends the litigation, and procures an injunction to restrain the parties from proceeding in the Supreme Court of Appeals of West Virginia for a *mandamus* to compel the judge of the State-court to proceed with the case. This is an unheard-of proceeding, for which there is neither reason nor authority, unless some of the cases, which we have cited above, may be supposed to confer upon litigants the right to do as they please in any action to which they are parties.

In support of this extraordinary proceeding the counsel for the Railway Company relies on *French, Trustee* v. *Hay*, 22 Wall. 250 and *Dietzsch* v. *Huidekoper*, 103 U. S. 494. There is no authority here for such a proceeding, nor is there any countenance given to such an idea. In *French, Trustee* v. *Hay* the suit was brought in the State-court, and after a decree had been entered in the case by that court, under one of the acts of Congress *the State-court* removed the case to the circuit court of the United States. There was no dispute as to its being a removable case. The Federal court set aside that decree, and after this the party, in whose favor the decree was rendered in the State-court, sent a transcript of the decree to Philadelphia and brought suit upon it. The person of said party being within the jurisdiction of the Federal court, it enjoined him from prosecuting said suit. In the

other case the Supreme Court of the United States held, that *the cause was removable*, and that the circuit court of the United States had jurisdiction to render the judgment.

There is no judgment here, that could under any circumstances be regarded as settling the rights of the parties. A *non-suit* settles nothing. It does not prevent the party from bringing another suit for the same cause of action. There is nothing in either of the answers to the rule, that justified the judge of the circuit court of Greenbrier county in refusing to proceed to try said case. He had jurisdiction and should have exercised it. The Supreme Court of the United States has recognized *mandamus* as the appropriate remedy in such case. *Ex parte Schollenberger* 96 U. S. 369.

A peremptory *mandamus* according to the prayer of the petition is awarded.

JUDGES GREEN AND WOODS CONCURRED.

MANDAMUS AWARDED.